441 So.2d 846 (1983)
John Buford IRVING, III
v.
STATE of Mississippi.
No. 54358.
Supreme Court of Mississippi.
August 24, 1983.
Rehearing Denied December 14, 1983.
*848 Ford & Ford and James O. Ford, Tupelo, for appellant.
Bill Allain, Atty. Gen., by Amy D. Whitten, Sp. Asst. Atty. Gen., Jackson, for appellee.
EN BANC.
PATTERSON, Chief Justice, for the Court:
John Buford Irving, III, was originally tried, convicted and sentenced to death in 1976 for the capital murder of store owner Gambrell Ray of Pontotoc County. Both conviction and sentence were affirmed by this Court in Irving v. State, 361 So.2d 1360 (Miss. 1978), where the facts necessary to this opinion are stated. Subsequently the United States District Court for the Northern District of Mississippi vacated the death sentence because it was that court's opinion Irving received ineffective assistance of counsel. Pursuant to the district court's *849 order, the state instituted resentencing proceedings, and Irving was again sentenced to death. He appeals, citing the following as error:
1. The trial court erred in granting State's instruction S-1;
2. The trial court erred in refusing defendant's instructions D-3, D-4 and D-11;
3. The sentence of death was excessive or disproportionate to the penalty in similar cases;
4. The trial court erred in applying Miss. Code Ann. § 99-19-101 (effective from and after April 13, 1977).
Under his first assignment of error, Irving contends the granting of general sentencing instruction S-1 was error for two reasons. We address each of these separately.
First, Irving argues the instruction improperly omitted definitions of the terms "robbery" and "pecuniary gain." The part of S-1 pertinent to this argument appears below:
Consider only the following elements of aggravation in determining whether the death penalty should be imposed:
(1) Whether or not the capital murder was committed while the defendant, John Buford Irving, III, was engaged in the commission of the crime of robbery and was committed for pecuniary gain. (Emphasis ours.)
Irving submits that by failing to define the emphasized terms the trial court neglected to channel the jury's discretion in arriving at sentence. We are of the opinion this argument fails in view of the posture of this case. In that the conviction by the first jury was not disturbed on appeal, the present sentencing jury was prohibited by the doctrine of res judicata from relitigating the issue of guilty. Rather, the second jury's function was to accept the first jury's finding that Irving was guilty of felony-murder involving robbery and then to determine sentence. Thus the definition of robbery and pecuniary gain would have been pointless and possibly confusing to the sentencing jury. We therefore conclude that the trial court's refusal to define these terms was not error.
Appellant also argues the trial court erred in combining pecuniary gain with robbery in the first circumstance. We have held these terms are not mutually exclusive. Smith v. State, 419 So.2d 563 (Miss. 1982); Voyles v. State, 362 So.2d 1236 (Miss. 1978). Tokman v. State, 435 So.2d 664 (Miss. 1983), on facts similar to those in this case, upheld an instruction setting out robbery and pecuniary gain as separate aggravating circumstances. Thus while it would have been proper for the trial court to have separately listed these two aggravating circumstances, the court did not do so and the appellant now complains because of their being combined into one circumstance. We are of the opinion instruction S-1 had the same content found permissible in previous cases and this argument is without merit. Moreover, the combining of the terms into one circumstance could possibly have benefitted Irving by presenting the jury with only one aggravating circumstance where two separate ones would have been justified.
Appellant's next attack on instruction S-1 involves the second aggravating circumstance, taken from Mississippi Code Annotated, § 99-19-101(5)(h) (1972), "that the murder was committed in an especially heinous, atrocious, or cruel manner." He urges it was error for the court to omit definitions of these terms. This argument is meritless in view of Washington v. State, 361 So.2d 61, 66 (Miss. 1978), wherein we stated:
It is our considered opinion that the average jury in its sound discretion and judgment understands the generally accepted meaning of the words "especially heinous, atrocious or cruel" and is able to apply these words to different factual situations without further definition of these words.
It is our opinion that these words are not unconstitutionally vague.
See also Coleman v. State, 378 So.2d 640 (Miss. 1979), and Tokman v. State, 435 So.2d 664 (Miss. 1983).
*850 Irving also argues that the evidence did not suggest the murder was "conscienceless or pitiless" or "unnecessarily torturous to the victim." Coleman v. State, 378 So.2d at 648, citing Spinkellink v. Wainwright, 578 F.2d 582, 611 (5th Cir.1978). Irving relies heavily on the fact that Ray died instantly. While the great majority of death penalty cases affirmed by this Court involve some type of physical and/or mental torture to the victim, we have never specifically held that a finding of § 99-19-101(5)(h) must be supported by evidence of prolonged suffering. In Edwards v. State, 413 So.2d 1007 (Miss. 1982), involving a robbery murder victim who died within fewer than thirty minutes of a single shotgun wound to the chest, we held the death penalty was not excessive, stating "A more calloused and unjustifiable killing could hardly be imagined." 413 So.2d at 1013.
The evidence in this case reveals the victim died instantly of a single shotgun wound to the neck. Doubtless Ray was in fear of his life from the time he saw the gun pointed at him until he was shot a few seconds later. We observe the other cases in characterizing Irving have focused on other elements besides torture or suffering, such as the fact that the killing was "totally senseless" and committed upon a hapless unarmed victim, Coleman v. State, 378 So.2d at 650. The record shows Irving had known Ray for many years, that Irving used this familiarity to gain admittance into the store after hours and then shot Ray for a small amount of money. Because of these facts and considering that the present case depicts a killing no less heinous than those in Edwards and Gilliard v. State, 428 So.2d 576 (Miss. 1983), it was not error for the court to include § 99-19-101(5)(h) in instruction S-1.
Appellant next argues that the trial court erred in refusing to grant instructions D-3, D-4 and D-11.
Instruction D-3 states, "I charge you that mitigating circumstances are those which do not constitute a justification or excuse for the offense in question, but which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame." We have held there is no reversible error where the instructions read as a whole fairly announce the law of the case and create no injustice. Norman v. State, 385 So.2d 1298, 1303 (Miss. 1980). See also Barr v. State, 359 So.2d 334 (Miss. 1978). Nor is a trial court required to grant cumulative or repetitious instructions. Ragan v. State, 318 So.2d 879 (Miss. 1975).
The trial court granted instruction S-1 which defined mitigating circumstances as "those which tend to warrant the less severe penalty." Further, the enumeration within S-1 of the particular circumstances which the jury was allowed to consider reinforced this definition:
(1) Whether the defendant has a significant history of prior criminal activity.
(2) The defendant's age at the time of the capital murder.
(3) Whether the defendant was an accomplice to the capital murder committed by another person and the defendant's participation was relatively minor.
(4) Any other matter, any other aspect of the defendant's character or record, and any other circumstances of the offense brought before you during the trial of this cause which you, the Jury, deem to be mitigating on behalf of the defendant.
Thus we are of the opinion that S-1 contained the substance repeated in D-3 and that it was therefore properly denied.
Instruction D-11 would have informed the jury that they might recommend mercy regardless of the weight of the aggravating and mitigating circumstances. Directly in point is Jordan v. State, 365 So.2d 1198 (Miss. 1978), in which appellant relied on the following language from Jackson v. State, 337 So.2d 1242, 1256 (Miss. 1976), "The jury shall not be required to make a special finding of any mitigating circumstances in order to return a verdict that the accused should be sentenced to life in prison." In Jordan we considered this language and stated:

*851 We note the great difference in not requiring the jury to find any mitigating circumstances in order to return a verdict of life imprisonment as opposed to not requiring the jury to "make a special finding of any mitigating circumstance in order to return a verdict that the accused should be sentenced to life in prison." 365 So.2d at 1205.
We find no authority requiring the trial court to grant an instruction such as D-11. Moreover, Bullock v. State, 391 So.2d 601, 610 (Miss. 1980), held that the "mercy instruction" was properly denied as conflicting with the court's instruction to weigh the mitigating circumstances against the aggravating circumstances. However, compare Tokman v. State, wherein we approved the granting of such instruction. It therefore appears that the "mercy instruction" is not mandated, but will be approved if granted by the trial court largely because it is not prejudicial to a defendant.
Instruction D-4 would have required the jury to specifically consider the eight mitigating circumstances enumerated as follows:
(a) The defendant has no record of criminal convictions for crimes involving force or violence to persons;
(b) The youth of the defendant at the time of the crime;
(c) The defendant's prior family history that would reasonably be expected to contribute to the defendant's criminal conduct including:
(1) Fatherless up-bringing;
(2) Lack of parental guidance.
(d) Since the murder, the defendant has been spiritually converted and has committed his life to Christ;
(e) The defendant is a model prisoner;
(f) He is an ordained minister and ministers to his fellow inmates daily;
(g) He has been instrumental in reforming persons addicted to drugs;
(h) The defendant did not kill the victim.
The court denied instruction D-4 because it contained elements not listed in Mississippi Code Annotated, § 99-19-101 (1972), but granted instruction S-1, which set out the following mitigating circumstances:
(1) Whether the defendant has a significant history of prior criminal activity.
(2) The defendant's age at the time of the capital murder.
(3) Whether the defendant was an accomplice to the capital murder committed by another person and the defendant's participation was relatively minor.
(4) Any other matter, any other aspect of the defendant's character or record, and any other circumstances of the offense brought before you during the trial of this cause which you, the Jury, deem to be mitigating on behalf of the defendant.
Noting that opinions of federal circuit courts are normally persuasive, we distinguish Washington v. Watkins, 655 F.2d 1346 (5th Cir.1981), which held the trial court could not specifically prohibit the jury from considering mitigating circumstances in addition to those listed in the statute. No such prohibition is found in the present case; to the contrary, the trial court clearly instructed the jury that they could consider additional mitigating factors. The record contains scores of pages of testimony from seventeen witnesses relating to each factor in instruction D-4. This testimony went with the jury through instruction S-1 in its deliberation. This authorized the jury to consider all the elements set out in instruction D-4, and therefore renders meritless appellant's complaint about the refusal of D-4.
Under his third assignment of error, Irving argues the following language from Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), requires reversal in the present case:
Although the judgments of legislatures, juries and prosecutors weigh heavily in the balance, it is for us ultimately to judge whether the Eighth Amendment permits imposition of the death penalty on one such as Enmund who aids and abets a felony in the course of which a murder is committed by others but who *852 does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed. We have concluded, along with most legislature and juries, that it does not.
458 U.S. at 796, 102 S.Ct. at 3376, 73 L.Ed.2d at 1151.
We are of the opinion this argument is predicated on the erroneous assumption that the jury was bound to accept the impeached and contradicted testimony of appellant's cousin, Keith Givhan, that it was Givhan and not Irving who shot Gambrell Ray. Noting first that the jury was entitled to reject such testimony, we again state that the issue of guilt was res judicata. Therefore, we are of the opinion that appellant is in no position to raise Enmund.
Appellant last argues the trial court's utilization of MCA, § 99-19-101 (effective from and after April 13, 1977) in his sentencing trial was improper according to MCA, § 99-19-1 (1972), and the ex post facto clause of the United States Constitution. MCA, § 99-19-1 reads as follows:
No statutory change of any law affecting a crime or its punishment or the collection of a penalty shall affect or defeat the prosecution of any crime committed prior to its enactment, or the collection of any penalty, whether such prosecution be instituted before or after such enactment; and all laws defining a crime or prescribing its punishment, or for the imposition of penalties, shall be continued in operation for the purpose of providing punishment for crimes committed under them, and for collection of such penalties, notwithstanding amendatory or repealing statutes, unless otherwise specially provided in such statutes.
Since appellant was originally tried and convicted in 1976 for this crime, he argues he should not have been sentenced according to the provisions of MCA, § 99-19-101, which did not come into effect until 1977. We conclude this argument fails on several grounds.
First, we are of the opinion appellant has misapplied § 99-19-1. By its terms, the statute comes to life only with respect to statutory changes "affecting the crime or its punishment." The 1977 amendments did not affect the substance of capital law but merely made changes in the procedures by which such cases were to be tried. Therefore, we do not find § 99-19-1 requires reversal in this case.
Next considering appellant's ex post facto argument, we note a similar issue was addressed in Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). Between the time of the commission of Dobbert's offense and the time of trial, Florida's death penalty statutes were changed to provide different procedures for determining sentence in capital cases. Dobbert argued the state violated the ex post facto clause by trying and sentencing him according to the new statutory procedures. The Supreme Court rejected this argument, stating, "It is axiomatic that for a law to be ex post facto it must be more onerous than the prior law." 432 U.S. at 294, 97 S.Ct. at 2299, 53 L.Ed.2d at 357. The Court noted that the new statute, "simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime." 432 U.S. at 293-94, 97 S.Ct. at 2298-99, 53 L.Ed.2d at 356. Finding that the statutory changes made between the time of the crime and the time of the trial were "procedural, and on the whole ameliorative," the Supreme Court upheld the sentence. 432 U.S. at 292, 97 S.Ct. at 2298, 53 L.Ed.2d at 355.
We are of the opinion the foregoing analysis applies to this case. In Gray v. State, 351 So.2d 1342, 1349 (Miss. 1977), we considered the 1977 enactments and stated:
It will be observed that the statute requires a different form of verdict than the one set forth in Jackson v. State, supra. Miss.Gen.Laws Ch. 458 (1977) was enacted after our decision in Jackson, supra, and sets forth aggravating and mitigating circumstances to be considered by the jury at the punishment stage of a capital case. Juries shall be instructed in accordance with the statute in all trials *853 after April 13, 1977, the effective date of the statute.
Implicit in this pronouncement was that the new statutes provided increased protection for capital defendants and the intent that all such defendants on trial after April 1977, should merit this protection. We are of the opinion the ex post facto contention is without merit.
We have reviewed the record and conclude that Irving received a fair trial. We also conclude the death penalty for John Buford Irving, III, is not disproportionate, wanton or freakish when compared with our other decisions upholding the death penalty subsequent to Jackson v. State, 337 So.2d 1242 (Miss. 1976).[1] Having scrutinized the record and found no reversible error, we affirm the judgment of the lower court and set Wednesday, September 28, 1983, as the date for execution of the sentence and infliction of the death penalty in the manner provided by law.
AFFIRMED.
WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, DAN M. LEE and PRATHER, JJ., concur.
HAWKINS and ROBERTSON, JJ., not participating.

APPENDIX "A"
DEATH CASES AFFIRMED BY THIS COURT:

Tokman v. State, 435 So.2d 664 (Miss. 1983).

Leatherwood v. State, 435 So.2d 645 (Miss. 1983).

Hill v. State, 432 So.2d 427 (Miss. 1983).

Pruett v. State, 431 So.2d 1101 (Miss. 1983).

Gilliard v. State, 428 So.2d 576 (Miss. 1983).

Evans v. State, 422 So.2d 737 (Miss. 1982).

King v. State, 421 So.2d 1009 (Miss. 1982).

Wheat v. State, 420 So.2d 229 (Miss. 1982).

Smith v. State, 419 So.2d 563 (Miss. 1982).

Edwards v. State, 413 So.2d 1007 (Miss. 1982).

Johnson v. State, 416 So.2d 383 (Miss. 1982).

Bullock v. State, 391 So.2d 601 (Miss. 1980).

Reddix v. State, 381 So.2d 999 (Miss. 1980).

Jones v. State, 381 So.2d 983 (Miss. 1980).

Culberson v. State, 379 So.2d 499 (Miss. 1979).

Gray v. State, 375 So.2d 994 (Miss. 1979).

Jordan v. State, 365 So.2d 1198 (Miss. 1978).

Voyles v. State, 362 So.2d 1236 (Miss. 1978).

Irving v. State, 361 So.2d 1360 (Miss. 1978).

Washington v. State, 361 So.2d 61 (Miss. 1978).

Bell v. State, 360 So.2d 1206 (Miss. 1978).
DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR RESENTENCING TO LIFE IMPRISONMENT.

Dycus v. State, 440 So.2d 246 (Miss. 1983).

Edwards v. State, 441 So.2d 84 (Miss. 1983).

Coleman v. State, 378 So.2d 640 (Miss. 1979).

ON PETITION FOR REHEARING
DAN M. LEE, Justice, for the Court:
This matter is presented to us in the form of a petition for rehearing of an opinion rendered by this Court wherein we affirmed John Buford Irving's sentence of death, for his role in the capital murder of store owner, Gambrell Ray. Following Irving's first trial both his conviction and death sentence were affirmed by this Court in Irving v. State, 361 So.2d 1360 (Miss. 1978). Subsequently Irving's death penalty was vacated by the United States District Court for the Northern District of Mississippi because that court concluded that Irving had received ineffective assistance of counsel. The District Court's opinion did not vacate the jury's finding of guilt. *854 Therefore, Irving was retried solely on the second phase of the bifurcated trial, the sentencing phase. A new jury was selected and Irving again received the death penalty. This Court affirmed that sentence of death in an opinion handed down August 24, 1983. It is from that affirmance that Irving now brings this petition for rehearing.
The first point raised by Irving in his petition is that our opinion was based on a false factual assumption because it stated that the facts pertinent to the decision could be found in the original Irving opinion which the District Court vacated as to the death sentence. Irving states that because he did not testify in the first trial and did in the second, reference to the facts as stated in the first opinion creates an incomplete factual situation. This point is not well taken as reference to our opinion reveals that we did consider Irving's testimony in the second trial in which he denied firing the fatal shot and instead placed the blame for that shot on his accomplice, Keith Givhan. Our opinion plainly held:
We are of the opinion this argument is predicated on the erroneous assumption that the jury was bound to accept the impeached and contradicted testimony of appellant's cousin, Keith Givhan, that it was Givhan and not Irving who shot Gambrell Ray. Noting first that the jury was entitled to reject such testimony, we again state that the issue of guilt was res judicata. Therefore, we are of the opinion that appellant is in no position to raise Enmund.

Therefore it cannot be said that our opinion ignored Irving's testimony or was based on a false factual assumption.
Irving next argues that our opinion misconstrues the quantum of proof required to sustain a verdict of death. He again argues that the opinion failed to consider his testimony that he was not responsible for firing the fatal shot. He also argues that the opinion neglects the "fact" that the victim, Ray, was advancing towards him. As these were matters for the jury's determination, and the jury's decision was certainly not contrary to the overwhelming weight of the evidence, this Court will not disturb their finding as they were free to accept or reject in whole or in part any of the testimony presented. Because our opinion fully addressed the circumstances of the murder and found that the jury was warranted in imposing the death penalty, this matter is res judicata and may not now be relitigated.
Irving's next argument is that the verdict of the jury was contrary to the law as to verdicts in capital cases. Here he argues that the jury's failure to enumerate what mitigating factors were involved in the killing renders their decision void. This contention was not assigned as error or presented on direct appeal. The issue may not now be raised for the first time on a petition for rehearing and it is procedurally barred. Edwards v. Thigpen, 433 So.2d 906 (Miss. 1983); Wheat v. Thigpen, 431 So.2d 486 (Miss. 1983).
Irving next argues that he was denied due process because of actions of the trial court in (1) failing to quash the jury panel, (2) limiting the defense voir dire of the jury panel, (3) limiting voir dire specifically of venireman Patterson and Givhan, (4) limiting voir dire on the issue of the death penalty, (5) allowing the district attorney to seek a commitment from members of the jury venire and other improper communications, (6) sustaining of an objection to the defense's voir dire, (7) refusal to grant change of venue, (8) allowing an anti-defendant sentiment to pervade the proceedings. None of these contentions were presented or argued to the court on direct appeal, therefore they may not be presented for the first time in this petition for rehearing and are thereby procedurally barred. Edwards, supra; Wheat, supra.
Irving's next argument is that he received ineffective assistance of counsel in six different areas:
1. Failure to poll the jury
2. Failure to insure complete record
3. Failure to have Irving present at "critical" stages of trial

*855 4. Failure to object to improper questions
5. Ineffective cross-examination
6. Failure to raise issues in the motion for a new trial and on appeal.
This Court recently pronounced the standard by which it would review claims of ineffective assistance of counsel. Callahan v. State, 426 So.2d 801 (Miss. 1983). In Callahan it was recognized that the state historically applied several different tests to claims of ineffective assistance of counsel. Citing Stewart v. State, 229 So.2d 53 (Miss. 1969), we attempted to end whatever confusion the multiplicity of standards may have caused. In Stewart, we adopted the test of
"Counsel reasonably likely to render and rendering reasonably effective assistance." Callahan at 804.
This test requires answering two questions: (1) Was the counsel reasonably likely to render reasonably effective assistance; and (2) Whether the counsel in fact rendered reasonably effective assistance. As to the first part of the test, the petition for rehearing contains no information on the education, experience or expertise of the trial and appellate counsel. Neither does the petition contend that counsel was reasonably unlikely to render reasonably effective assistance because of inadequate education, experience or expertise in criminal cases. Therefore, we must conclude that Irving's trial and appellate counsel was reasonably likely to render effective assistance. Callahan, supra.
As to the second part of the test we must inquire whether the counsel provided reasonably effective assistance. The petition alleges six specific areas in which the assistance of counsel was ineffective.
1. Failure to poll the jury. Because the jury foreman reported a unanimous verdict and it does not appear that the outcome of the proceedings have been altered but for the failure to poll the jury, this deficiency of counsel does not require reversal. Callahan, supra.
2. Failure to insure a complete record. Irving argues that during the voir dire certain bench conferences between the trial judge and counsel do not appear in the record and therefore this Court does not have the basis of the trial judge's "constitutionally important decisions." We note that frequently bench conferences do not appear in the transcripts and records which we review. Lack of the benefit of those conferences does not prevent this Court from ruling on the correctness of the outcome of those conferences. Therefore, it cannot be said that the appellant suffered any actual and substantial disadvantage resulting from failure to include those conferences in the record. Absent actual and substantial disadvantage we cannot hold that counsel's assistance was so ineffective as to require reversal. Callahan, supra.
3. Failure to have Irving present at "critical stages of the trial". Irving's argument here is that his attorney failed to have him present during "critical stages" of the trial, but the brief mentions that Irving was not present only at certain bench conferences. Because it is certain beyond a reasonable doubt that the outcome of the proceedings would not have been altered had Irving been present at these bench conferences we do not find that this ground gives rise to claim of ineffective assistance of counsel.
4. The failure to object to improper questions. Irving next argues that the record reflects several instances where the trial defense counsel did not object to improper questions posed by the prosecutors. Two of the points at which Irving contends objections should have been made occurred during the voir dire of the venire panel. The other times Irving contends objections should have been made resulted from certain leading questions.
Decisions as to when to object to counsel opposite's questions are a matter of trial tactics. Every attorney with courtroom experience is aware that excessive objections may actually tend to hinder his client's case. Regarding the alleged improper questions posed to the venire panel, we note from the record that it was defense counsel's intention to ask further questions of the panel *856 which he was not permitted to do by the trial judge. Therefore, counsel's decision not to object was a matter of tactics and not simple neglect. Because we cannot say that an objection would have altered the outcome of the proceeding we do not hold that failure to object to these questions constituted ineffective assistance of counsel.
As to the leading questions, the same testimony could have been elicited by simple rephrasing of the questions. Therefore it cannot be said that Irving suffered any actual or substantial disadvantage because of the failure to object.
5. Ineffective cross examination:
Irving next argues that his counsel was ineffective because he failed to conduct effective cross-examination. One of Irving's key points here is that Mrs. Ray, the victim's wife, was not asked why she heard and recognized Irving's voice while he was still outside the building but did not hear any of the alleged conversation that took place inside the building. Even the most skilled trial attorneys recognize that cross-examination is a useful but potentially dangerous tool. Artful cross-examination does not allow an adverse witness to give further damaging testimony. There is a range of logical explanations for Mrs. Ray's inability to hear Irving once he was in the building. Many of these would have allowed her to again emphasize that she was positive in her identification of Irving's voice outside the building. The use of cross-examination as much as any part of the trial is a tactical matter. Having reviewed the record and the cross-examinations of the many witnesses conducted by defense counsel, we cannot say that Irving's counsel was so deficient as to require reversal.
6. Failure to raise issues in the motion for a new trial and on direct appeal:
Irving's last contention regarding ineffective assistance of counsel relates to the failure to raise issues in his motion for a new trial and on direct appeal. This is the contention which we view most seriously for as noted previously in this opinion there are points which may have been raised on appeal but were not and are now procedurally barred. That is not to say that had we considered those points beyond the recognition of the procedural bar we would have found any merit to them. Opinions of this court have previously recognized that death penalty litigation has become highly specialized and that few attorneys have "even a surface familiarity with seemingly innumerable refinements put on Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and progeny." Evans v. State of Mississippi on application for leave to file petition for writ of error coram nobis, 441 So.2d 520 (Miss. 1983) (Justice Robertson dissenting.) A criminal defendant is not entitled to a perfect trial, merely a fair one. The same is true of his appellate representation. On direct appeal Irving's counsel raised a number of points which were well briefed and argued. We cannot say that the failure to raise every possible point on appeal rendered Irving's counsel so ineffective as to require reversal. Based on all of the foregoing, we hold that Irving did not receive ineffective assistance of counsel.
The final point raised by Irving is a contention that because he did not receive the same jury after the Federal District Court remanded for a new sentencing trial he was subjected to double jeopardy. Because this point was not raised on direct appeal, it is procedurally barred.
Based on all of the foregoing, John Buford Irving, III's petition for rehearing is hereby denied.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING and PRATHER, JJ., concur.
HAWKINS and ROBERTSON, JJ., not participating.
NOTES
[1] See Appendix "A".