ROBERTSON, Justice,
concurring:
I.
As in Wiley v. State, 484 So.2d 339 (Miss.1986) (see particularly my separate opinion, 484 So.2d at 356-63, in which Justices Dan M. Lee and Sullivan joined), I find myself between Scylla and Charibdis. In articulating my views and casting my vote whether Gregory Montecarlo Jones should live or die, I seek to avoid derogation of the principles of stare decisis, and as well not to denigrate my sworn allegiance to individualized justice, the notion that no judge should vote for a proposition that cannot be rationally justified. I refer to the fact that en route to affirmance of the death sentence imposed upon Jones, the Court again places its imprimatur upon two points of construction of our capital sentencing statute I find demonstrably flawed. We do this in “blind imitation of the past” cf. Holmes, The Path of the Law, 10 Harv.L. Rev. 457, 469 (1897).
First, and specifically, we again approve a construction of our capital sentencing statute which authorizes a single factual circumstance to generate two legally separate and distinct aggravating circumstances, to-wit: that the capital offense was committed while the defendant was engaged in the commission of a robbery and that the capital offense was committed for pecuniary gain. Second, we once again approve a distortion of the legislative language by recognizing in effect that every capital murder is “especially heinous, atrocious or cruel,” if only the jury so finds, notwithstanding the absence of evidence to that effect.
As in my separate opinion in Wiley, I concur in the result we reach today, primarily by reason of stare decisis. Our prior cases have held that submission to the jury of instructions such as those at issue here, in fact situations legally analogous to that before us today, is not error where the circuit judge in his discretion elects to give them.
This does not mean it must be ever thus. As in Wiley the primary addressees of this opinion are our trial judges. The judicially sound way out of the hole we have dug for ourselves is for our trial judges to exercise their sound discretion in cases in the future in denial of the robbery/pecuniary gain stacking instruction, in requiring that the prosecution offer proof that the capital murder was indeed especially heinous, cruel and atrocious before the point goes to the jury at all, and, where a jury issue is made out, by granting an appropriate explanatory instruction.
II.
My first Wiley concern arises only in cases where the capital murder is commit *1305 ted in the course of a robbery, a factual circumstance by no means unfamiliar in the capital cases this Court has considered over the past decade.
As all know, two of the statutory aggravating circumstances which, if factually supported, a jury may consider at the penalty phase, are:
(d) the capital offense was committed while the defendant was engaged ... in the commission of ... any robbery_
******
(f) the capital offense was committed for pecuniary gain.
Miss.Code Ann. § 99-19-101(5) (Supp.1986).
Today, as before, we refuse to disturb a trial judge’s jury instruction which allows the jury, upon the predicate of a single factual circumstance, to find both of these aggravating circumstances. The vice in this instruction is that it gives the prosecution two points toward death where rationally it is entitled to but one. Such stacking has no place in a fairly administered, individualized guided discretion capital sentencing system.
In Wiley I explained that the “robbery” and “pecuniary gain” aggravating circumstances legally and linguistically contemplate separate and distinct circumstances. In the present case, the “robbery” aggravating circumstance instruction was entirely proper. There was substantial evidence that the defendant, Gregory Montecarlo Jones, committed a robbery of Josie Lincoln Jones in substantial connection with the murder. On the other hand, the “pecuniary gain” instruction was wholly out of place. This language contemplates the hired killing, the contract murder or perhaps the murder to collect life insurance proceeds. There is no evidence in the present record which would authorize such an instruction.
My complaint is twofold. First, this stacking of aggravating circumstances in capital murder/robbery cases is indefensible for the rather simple reason that a single, legally indivisible act of the defendant may rationally aggravate a murder but once. Wiley, 484 So.2d at 358. Second, we continue to reject the proposition which I urge — there and here — without ever employing “neutral, non-result oriented techniques of legal reasoning to explain the basis of the rule we have chosen to follow.” Wiley, 484 So.2d at 358.
In its brief in today’s case, the Attorney General, as representative of the State’s prosecutorial interest, takes up my Wiley challenge to provide an acceptable rationale for robbery/pecuniary gain stacking. It does this not by its own rationale but by citation to decisions from six other jurisdictions: North Carolina, Delaware, Wyoming, Missouri, Arkansas and Arizona. North Carolina is most prominent. See State v. Oliver, 302 N.C. 28, 274 S.E.2d 183 (1981) and State v. Irwin, 304 N.C. 93, 282 S.E.2d 439 (1981). These cases justify stacking because the concept of “pecuniary gain” has reference to “the motive of the defendant rather than his acts.” Irwin, 282 S.E.2d at 448. The “robbery” and “pecuniary gain” circumstances are said to be different because the former refers to the defendant’s acts and the latter to his motive. Wyoming buys into this “reasoning” in Engberg v. State, 686 P.2d 541, 552-54 (Wyo.1984), which, of course, is utter nonsense for the rather elementary reason that intent to steal, the “motive,” is already an essential element of the criminal offense of robbery. See McFadden v. State, 408 So.2d 476, 481 (Miss.1981); McCray v. State, 153 Miss. 587, 589, 121 So. 291, 292 (1929). Indeed, the words “rob” or “robbery” import an intent to steal. Herron v. State, 176 Miss. 795, 799, 170 So. 536, 537 (1936); Baygents v. State, 154 Miss. 36, 39, 122 So. 187, 188 (1929). Whoever heard of a prosecutor trying to convict one of robbery without trying to prove the exact, same motive North Carolina and Wyoming find having nothing to do with robbery but lying exclusively within the province of “pecuniary gain”. The state of mind, intent, motive — use whatever word you will — which yields a defendant guilty of the aggravating circumstance of robbery is the same as that which in North Carolina and Wyoming, and, I regret, Mississippi, exposes him to the finding that his capital offense was committed for pecuniary gain. *1306 A single, legally indivisible evil state of mind may rationally aggravate a capital murder but once. Wiley, 484 So.2d at 358.
I have no quarrel with the cases cited from Arizona, State v. Gretzler, 135 Ariz. 42, 659 P.2d 1, 7, 8-9 (1983); Arkansas, Miller v. State, 269 Ark. 341, 605 S.W.2d 430, 438, 440 (1980); and Missouri, State v. McDonald, 661 S.W.2d 497, 503 (Mo.1983). None of those cases authorizes the sort of stacking at issue here. True, each of these cases, in the context of a robbery/killing, approves submission to the jury of the particular state’s analogue to our “pecuniary gain” aggravating circumstance. But in none of those cases was robbery also submitted or found as an aggravating circumstance at sentencing. Flamer v. State, 490 A.2d 104, 125-26 (Del.1983) is innocuous. It approves stacking (a) because the Florida case rejecting it, Provence v. State, 337 So.2d 783 (Fla.1976) was procedurally distinguishable — which proves nothing — and (b) without offering any neutral, non-result-oriented rationale why stacking is fair or should be allowed, a la our cases cited in Wiley, 484 So.2d at 357-58.
In the end I again urge that the views I expressed in Wiley, 484 So.2d at 357-58, are legally and logically sound[1] and that they have not been refuted or undermined by anything provided by the State in its brief in today’s case (although I greatly appreciate the Attorney General’s taking the point seriously enough to provide what cases could be found in other jurisdictions).
In future capital murder trials in which the killing occurred while defendant was in the course of commission of a robbery, jury instructions at the sentencing phase should not authorize the finding of two aggravating circumstances predicated upon the same factual occurrence. In such cases the better, fairer course would be submission to the jury of aggravating circumstance (d) [Section 99-19-101(5)(d) ], that the capital offense was committed while the defendant was engaged in commission of any robbery, and excluding aggravating circumstance (f) [Section 99-19-101(5)(f) ], that the capital offense was committed for pecuniary gain.
III.
My second concern is the trial judge’s determination that the evidence in this case was legally sufficient to submit to the jury aggravating circumstance (h): “The capital offense was especially heinous, atrocious or cruel,” Miss.Code Ann. § 99-19-101(5)(h) (Supp.1986), when nothing could be further from the truth. See Justice Prather’s dissenting opinion in Edwards v. State, 441 So.2d 84, 94-96 (Miss.1983) and my separate opinion in Wiley, 484 So.2d at 358-60. My complaint is that today, as in Wiley and before, we construe this aggravating circumstance in a manner that does violence to the language employed by the legislature and strips it of any capacity to aid in the fair administration of our capital sentencing system.
Our context is the fundamental premise of the individualized, guided discretion capital sentencing system mandated by Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) and progeny, to-wit: the sentencing authority, in this instance, the jury, must be submitted rational guidelines to be applied to all murders and must winnow out those qualitatively more reprehensible and expose only persons committing those to the death penalty. The vice in this Court’s administration of the “especially heinous, atrocious or cruel” aggravating circumstance is that in practice it has been rendered impotent to assist performance of this winnowing out function. That is, our cases have reached the state where we are routinely holding that practically every murder is at least arguably “especially heinous, atrocious or cruel.”
A useful contrast may be found in Arizona, which has followed a different course in construction of its analogous aggravating circumstance. In State v. Gretzler, 135 *1307 Ariz. 42, 659 P.2d 1 (1983), the Arizona Supreme Court wrote
Our initial interpretation of this statutory phrase recognized that the words “especially heinous, cruel, or depraved” killing wherein additional circumstances of the nature enumerated * * * set the crime apart from the usual or the norm. State v. Knapp, supra, 114 Ariz. [531] at 543, 562 P.2d [704] at 716 [ (1977) ], citing State v. Dixon, 283 So.2d 1, 9 (Fla.1973). “We have more recently reiterated that we will not allow this provision to be used as a “catch-all” for those first degree murders where no other aggravating circumstance applies.” State v. Ortiz, supra, 131 Ariz. [195] at 206, 639 P.2d [1020] at 1031 [(1981)].
* * * * * *
Where, however, there is no evidence that the victims actually suffered physical or mental pain prior to death, or where the evidence presented is inconclusive, we have held that cruelty was not shown. See, e.g., State v. Ortiz, supra, 131 Ariz. at 210, 639 P.2d at 1035; State v. Bishop, supra, 127 Ariz. [531] at 534, 622 P.2d [478] at 481 [(1981)]; State v. Clark, supra, 126 Ariz. [428] at 436, 616 P.2d [888] at 896 [ (1980) ]; State v. Ceja, supra, 126 Ariz. [35] at 39, 612 P.2d [491] at 495 [(1980)].
659 P.2d at 9-10.
In Edwards, Justice Prather, with three other Justices concurring, urged that the words “especially heinous, atrocious or cruel” were sufficiently vague that greater refinement and specificity should be brought to bear in the matter of jury instructions. Edwards, 441 So.2d at 94-96. The point, of course, was to render this particular statutory aggravating circumstance capable of performing the constitutionally mandated winnowing out function. In my separate opinion in Wiley I suggested that greater emphasis be given to the critical word “especially” to the end that the aggravating circumstance be applied only where the level of heinousness, atrociousness or cruelty of the murder substantially exceeded that which in the laymen’s intuitive sense no doubt accompanies any murder. Though both Justice Prather’s suggestion in Edwards and my suggestion in Wiley failed to command support of a majority of the Court, I continue to believe that each has substantial merit.
Upon further reflection, I would urge our trial judges, when deciding (a) whether the evidence on the issue of “especially heinous, atrocious or cruel” was legally sufficient to submit that possible aggravating circumstance to the jury and (b) how to frame an instruction defining “especially heinous, atrocious or cruel,” should consider, in addition to the Edwards and Wiley suggestions noted above, these further points.
First, sensitive reflection upon the language “especially heinous, atrocious or cruel” imports notions of torture. A murder may be said to be “especially heinous, atrocious or cruel” when it involves the unnecessary and wanton infliction of pain. The idea that this aggravating circumstance imports the torture of the victim was seemingly adopted in Coleman v. State, 378 So.2d 640, 648 (Miss.1979). Since Coleman we have sporadically given the torture notion lip service. Wiley v. State, 484 So.2d 339, 353-54 (Miss.1986); Jordan v. State, 464 So.2d 475, 478 (Miss.1985); Mhoon v. State, 464 So.2d 77, 84-85 (Miss.1985); Billiot v. State, 454 So.2d 445, 464-65 (Miss.1984). We have on numerous occasions, however, refused to disturb “especially heinous, atrocious or cruel” jury findings on facts suggesting no element of torture. See, e.g., Booker v. State, 449 So.2d 209, 213, 220-21 (Miss.1984); Irving v. State, 441 So.2d 846, 850 (Miss.1983). In Irving we recognized that
the great majority of death penalty cases affirmed by this Court involve some type of physical and/or mental torture to the victim,
but went on to observe that
we have never specifically held that a finding of § 99-19-101(5)(h) [“especially heinous, atrocious or cruel”] must be supported by evidence of prolonged suffering.
441 So.2d at 850.
The Irving Court offers no reason why “especially heinous, atrocious or cruel” *1308 should not be held to require evidence of torture or prolonged suffering. Rather the Court affirms Irving’s death sentence because the facts were found analogous to those in Gilliard v. State, 428 So.2d 576 (Miss.1983) and Edwards v. State, 413 So.2d 1007 (Miss.1982).
An instinctive analogy may be found in the “cruel and unusual punishment” clause of the Eighth Amendment to the Constitution of the United States. Grammatically speaking, the adjectival collection “especially heinous, atrocious or cruel” would seem to connote an infliction upon the victim of pain or agony even greater than that contemplated by the relatively milder phrase “cruel or unusual.” The point is brought into focus by reference to the authoritative construction of the words “cruel or unusual” as not precluding infliction of the death penalty by shooting or, more specifically, a firing squad. See Wilkerson v. Utah, 99 U.S. (9 Otto) 130, 136, 25 L.Ed. 345 (1878). In the context of the infliction of the death penalty, the method of killing the convicted murderer is not cruel or unusual unless it is barbarous, involves torture or a lingering death. See Gregg v. Georgia, 428 U.S. 153, 170-71, 96 S.Ct. 2909, 2923-24, 49 L.Ed.2d 859, 873 (1976). The record in the case at bar reflects that Josie Lincoln Jones was found dead on her living room floor. She had been fatally wounded by three bullets fired from a .22 caliber single shot, bolt action rifle. There is no evidence that Ms. Jones suffered a lingering death or that she was subjected to torture or the wanton infliction of pain. More specifically, there is no evidence that Jones’ death was more torturous, barbarous, painful or cruel than has been that of any individual executed by a firing squad. See Andrews v. Shulsen, 600 F.Supp. 408, 431 (D.Utah 1984), aff’d. 802 F.2d 1256, 1275 n. 16 (10th Cir.1986). When we add to this the mental agony experienced by the condemned while awaiting execution, see, e.g., Camus, Reflections On The Guillotine, reprinted in Resistance, Rebellion and Death, 152-57 (1960), Dostoyevsky, The Idiot 47-48 (D. Magarshack trans. 1955); and District Attorney for Suffolk District v. Watson, 381 Mass. 648, 664, 684-86, 411 N.E.2d 1274, 1283, 1290-95 (1980) the experience of the person executed by firing squad is more heinous, atrocious and cruel than that of a murder victim such as Josie Lincoln Jones.
Notwithstanding the force of correct linguistic analysis, we have repeatedly refused to disturb jury findings that gunshot murders, unattended by significant prior fear on the part of the victim and where death followed the shooting within a matter of minutes, were “especially heinous, atrocious or cruel.” See, e.g., Wiley v. State, 484 So.2d 339, 342, 353 (Miss.1986) (ambush-style shotgun slaying where victim had no idea he was in danger and died shortly after being shot); Booker v. State, 449 So.2d 209, 213, 220-21 (Miss.1984) (victim shot in head at time when he had no idea he was about to be shot; no evidence of physical suffering prior to death); Irving v. State, 441 So.2d 846, 850 (Miss.1983) (victim shot within a few seconds of his first seeing murderer, “died instantly of a single shotgun wound to the neck”); Gilliard v. State, 428 So.2d 576, 578, 586 (Miss.1983) (shotgun slaying of liquor store proprietor within minutes after defendant entered store; no evidence of lingering death); Evans v. State, 422 So.2d 737, 739, 747 (Miss.1982) (food store clerk shot in course of robbery; no suggestion in opinion of substantial pre-death mental anguish or pain after shooting); Johnson v. State, 416 So.2d 383, 385, 393 (Miss.1982) (town marshall shot unexpectedly in line of duty, fell to ground, then shot twice in head and lost consciousness within fifteen seconds); and Edwards v. State, 413 So.2d 1007, 1008, 1013 (Miss.1982) (convenience store clerk shot in course of robbery; no evidence of victim being placed in fear substantial time before shooting, nor that he suffered a lingering or painful death). And today we refuse to disturb a jury finding that the killing of Josie Lincoln Jones was “especially, heinous, atrocious or cruel” in the context of a record reflecting that she had been shot by three .22 caliber bullets, and in the absence of significant pre-death fear or significant post-shooting pain or lingering. Objectively and dispassionately, *1309 none of these murders was as cruel an act as the execution of Gary Gilmore by firing squad in Utah in 1977. See Gilmore v. Utah, 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976).
To be sure, much may be said of these eight murders that may suggest condemnation of the accuseds. Other aggravating circumstances are present in each case. None, however, may fairly be labeled “especially heinous, atrocious or cruel” without doing substantial violence to the common sense meaning of that phrase. In my view, upon reflection, and as I have come to understand the phrase, the evidence was insufficient as a matter of law in each of these eight cases to allow submission to the jury for its consideration the possible aggravating circumstance that the capital offense was especially heinous, atrocious or cruel.
The United States Court of Appeals for the Fifth Circuit has recently considered our stewardship of the “especially heinous, atrocious or cruel” aggravating circumstance in Johnson v. Thigpen, 806 F.2d 1243, 1245 (5th Cir.1986). The Johnson opinion begins recognizing our seeming adoption of a restrictive construction of the language at issue in Coleman v. State, 378 So.2d 640, 648 (Miss.1979). Indeed, the Court of Appeals noted that it had relied upon the Coleman reading of “especially heinous, atrocious or cruel” in Gray v. Lucas, 677 F.2d 1086, 1105 (5th Cir.1982). Johnson then observes, quite accurately, that
“Since Gray, however, the Mississippi Supreme Court has not consistently applied its Coleman limiting construction. 806 F.2d at 1246.
* * * * * *
The limiting construction we found in Gray had been adopted in Coleman appears now to be more honored in breach than observance.” 806 F.2d at 1247.
The Johnson discussion takes place in the context of a federal constitutional claim that our “especially heinous, atrocious or cruel” aggravating circumstance as applied fails to perform the narrowing function mandated by such cases as Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) and progeny. Johnson finds no constitutional error because, leaving aside aggravating circumstances, our statutory definition of capital murder narrows the class of persons eligible for the death penalty in a constitutionally adequate manner. Compare Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). We have searched Johnson in vain for the slightest hint that the Fifth Circuit, as an external observer, considers that our “especially heinous, atrocious or cruel” aggravating circumstance— as we have administered it for the past five years — contributes one iota to the goal of fair and rational selection, from all capital murderers, of those whose crimes are qualitatively sufficiently reprehensible that they should be exposed to judicial consideration of the penalty of death. In contrast with Johnson our concern is the construction and application of words chosen by our legislature and embodied in an admittedly constitutional statute. Though it finds no constitutional error, Johnson suggests tactfully unmistakeably — and correctly— that in recent years we have not done a very good job in that statutory construction endeavor.
Notwithstanding that this Court may consider itself bound under stare decisis, the trial judges of this state in cases arising hereafter are free to employ those rules generally applicable in deciding whether fact questions should be submitted to a jury. That decision turns upon whether there is evidence which, if believed by the jury, could result in resolution of the issue in favor of the party requesting the instruction. (Conversely, only where the evidence is so one-sided that no reasonable juror could find for the requesting party on the issue at hand may the trial court deny an instruction on a material issue. See, e.g., Phillips v. State, 493 So.2d 350, 353-54 (Miss.1986); Harbin v. State, 478 So.2d 796, 799 (Miss.1985); Lee v. State, 469 So.2d 1225, 1230-31 (Miss.1985); Fairchild v. State, 459 So.2d 793, 801 (Miss.1984). The above standard in mind, in cases (such as the one at bar) where the victim died of *1310 gunshot wounds, or any other means causing relatively instant death, and where there is no evidence of any barbarity, torture or wanton infliction of pain, or a lingering mental or physical agony, the trial judge should hold as a matter of law that the prosecution is not entitled to have the jury consider, as a possible circumstance in aggravation, that the capital murder may have been “especially heinous, atrocious or cruel.” Cf. Miller v. State, 269 Ark. 341, 605 S.W.2d 430, 438-39 (1980).
In those cases where the prosecution’s evidence meets this threshold test, the trial judge should afford the jury an instruction which clearly communicates to the jury that, in order to find the existence of this circumstance in aggravation, the jury must find beyond a reasonable doubt that the killing possessed some quality of barbarity, torture, wanton infliction of pain or lingering mental or physical agony over and above that attendant upon a relatively unexpected fatal blow producing a relatively instant death. See Edwards v. State, 441 So.2d 84, 94-96 (Miss.1983) (Prather, J., dissenting, joined by Patterson, C.J., and Hawkins and Robertson, JJ.).
IV.
Having had my say and for reasons expressed further in my Wiley opinion, 484 So.2d at 362-63, I concur in Sections I through VII, IX, and XI through XIV of the majority opinion. I reluctantly concur in the result in Sections VIII and X.
DAN M. LEE and PRATHER, JJ., join in this opinion.
GRIFFIN, J., not participating.

. My anti-stacking view is not without its supporters. State v. Rust, 197 Neb. 528, 250 N.W. 2d 867, 874 (1977); Ashlock v. State, 367 So.2d 560, 561 (Ala.Cr.App.1978); and Provence v. State, 337 So.2d 783, 786 (Fla.1976).