498 So.2d 305 (1986)
John Buford IRVING, III
v.
STATE of Mississippi.
No. 54358.
Supreme Court of Mississippi.
June 30, 1986.
Rehearing Denied November 12, 1986.
*306 Robert B. McDuff, Deborah Hodges Bell, University, Lawrence Speiser, John Racin, Washington, D.C., for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Marvin L. White, Jr., Asst. Atty. Gen. and Amy Whitten, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
PATTERSON, Chief Justice, for the Court:

ON APPLICATION FOR LEAVE TO FILE MOTION TO VACATE JUDGMENT AND DEATH SENTENCE
Irving was convicted of capital murder by the Circuit Court of Pontotoc County in *307 1976. He was the first defendant to be tried, convicted, and sentenced to death under the bifurcated procedure promulgated in Jackson v. State, 337 So.2d 1242 (Miss. 1976). A unanimous decision of this Court affirmed both the guilt and sentencing phases of the trial. Irving v. State, 361 So.2d 1360 (Miss. 1978), cert. denied, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979).
On Petition for Writ of Habeas Corpus, a Federal District Court vacated Irving's death sentence because it was of the opinion his counsel had discouraged Irving from testifying in the sentencing phase of trial to protect a co-defendant his attorney was also representing. This violated Irving's fundamental right to testify in his own behalf. See Irving v. Hargett, 518 F. Supp. 1127 (N.D.Miss. 1981).
Resentencing proceedings were instituted and Irving was again sentenced to death. This Court upheld the conviction and petition for rehearing was denied. See Irving v. State, 441 So.2d 846 (Miss. 1983), cert. denied, 470 U.S. 1059, 105 S.Ct. 1774, 84 L.Ed.2d 834 (1985), rehearing denied, 471 U.S. 1095, 105 S.Ct. 2170, 85 L.Ed.2d 527 (1985).
The facts presented in this application have been stated in prior opinions and need not be repeated. The relief presently sought is pursuant to Miss. Code Ann., § 99-39-1, et seq. (Supp. 1984), the Mississippi Uniform Post-Conviction Collateral Relief Act. All points now urged for relief relate either to the initial determination of guilt or to the second sentencing trial.
According to our review and study all points now presented have either been disposed of by prior adjudication making them res judicata; or, the points were not raised at trial or in prior appeals and are now procedurally barred. Moreover, many are now before us unsupported by legal authority.
It is our opinion the present application is an attempt to revive previously litigated issues by framing questions differently, or, to present those which should have been raised during previous trials.
The Application for Leave to File Motion to Vacate Judgment and Death Sentence is denied.
APPLICATION DENIED.
WALKER and ROY NOBLE LEE, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
HAWKINS and ROBERTSON, JJ., not participating.
DAN M. LEE, Justice, for the Court:

ON PETITION FOR REHEARING
John Buford Irving's application for post-conviction relief was originally denied by this court in an opinion written by former Chief Justice Patterson, decided on June 30, 1986. Irving subsequently petitioned this Court for rehearing. The following opinion more fully develops the issues considered and decided upon in the original opinion, in light of more recent decisions by the United States Supreme Court and the Court of Appeals for the Fifth Circuit. However, the ultimate holding of this Court is unchanged, and Irving's Petition for Rehearing on the denial of his Application for Leave to File Motion to Vacate Judgment and Death Sentence is denied.
Irving was convicted of capital murder by the Circuit Court of Pontotoc County in 1976. He was the first defendant to be tried, convicted, and sentenced to death under the bifurcated procedure promulgated in Jackson v. State, 337 So.2d 1242 (Miss. 1976). A unanimous decision of this Court affirmed both the guilt and sentencing phases of the trial. Irving v. State, 361 So.2d 1360 (Miss. 1978), cert. denied, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979).
On Petition for Writ of Habeas Corpus, a Federal District Court vacated Irving's death sentence because it was of the opinion his counsel had discouraged Irving from testifying in the sentencing phase of trial to protect a co-defendant his attorney was also representing. This violated Irving's *308 fundamental right to testify in his own behalf. See Irving v. Hargett, 518 F. Supp. 1127 (N.D.Miss. 1981).
Resentencing proceedings were instituted and Irving was again sentenced to death. This Court upheld the conviction and petition for rehearing was denied. See Irving v. State, 441 So.2d 846 (Miss. 1983), cert. denied, 470 U.S. 1059, 105 S.Ct. 1774, 84 L.Ed.2d 834 (1985), rehearing denied, 471 U.S. 1095, 105 S.Ct. 2170, 85 L.Ed.2d 527 (1985).

FACTS
Gambrell Ray was shot to death on March 3, 1976, by an intruder in his rural grocery store. Mrs. Ray, who was in the living quarters in the rear of the store at the time of the shooting, testified that she heard someone ask for cigarettes just before the gunshot. After the shot, she picked up a pistol and went into the store, where she saw Irving standing in the doorway with a shotgun. Mrs. Ray ultimately left the store before the assailant. When officers returned to investigate, Irving, a cash box, and a shotgun owned by Ray were missing. The shotgun and a large amount of change were later discovered by a friend of Irving's family, with whom he had stayed after the incident.
Irving made a statement to local authorities, in which he stated that he shot Ray after Ray stepped toward him. The statement was admitted at Irving's first trial, over his objection. In his second sentencing hearing, Irving testified that he did not fire the fatal shot, but that his cousin, Keith Givhan, did. This is the position Irving has taken with respect to this Application. Givhan has also taken full responsibility for the incident; both by testifying at Irving's second sentencing hearing, and by an affidavit dated May 28, 1979, which is attached to this Application.

DISCUSSION OF LEGAL ISSUES

I. THE POST CONVICTION RELIEF ACT
Irving first alleges that any errors not asserted on direct appeal should not be procedurally barred by Miss. Code Ann. §§ 99-39-1, et. seq, also known as the Uniform Post-Conviction Collateral Relief Act. To do so, according to Irving, would unconstitutionally limit this Court's review. Furthermore, as the Act was passed well after Irving's trial, he argues that it cannot constitutionally be applied retroactively to him. He argues that traditional review under the writ of error coram nobis should be applied to his case, particularly since he is laboring under a sentence of death.
As the State argues, the Post-Conviction Relief Act is not a new concept in Mississippi jurisprudence; it merely codifies existing constraints on review traditionally practiced by this Court. In recent cases, it has been repeatedly upheld as mandating that issues not raised on direct review are waived, and issues addressed on direct review are res judicata; both, procedurally barred. Stringer v. State, 485 So.2d 274 (Miss. 1986); Dufour v. State, 483 So.2d 307 (Miss. 1985); Tokman v. State, 475 So.2d 457 (Miss. 1985); Leatherwood v. State, 473 So.2d 964 (Miss. 1985).
The United States Supreme Court has recognized that the States have legitimate reasons for procedurally barring certain claims. In Murray v. Carrier, ___ U.S. ___, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), speaking in the context of failure to raise an objection at trial, the Court said that the defendant attempting to justify a procedural default must show cause and prejudice.
The standard rests not only on the need to deter intentional defaults but on a judgment that the costs of federal habeas review `are particularly high when a trial default has barred a prisoner from obtaining adjudication of his constitutional claim in the state courts.' Engle [v. Isaac], 456 U.S. [107] at 128 [102 S.Ct. 1558, at 1572, 71 L.Ed.2d 783].
___ U.S. at ___ 106 S.Ct. at 2645, 91 L.Ed.2d at 407.
The Court went on to hold that showing cause for the default rests not on the type of error made by counsel, as long as counsel *309 was effective under the Strickland standard.
Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.
___ U.S. at ___, 106 S.Ct. at 2646, 91 L.Ed.2d at 408.
Citing Reed v. Ross, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), the Court held that the same standard applied when the claim was defaulted on appeal, rather than at trial.
The result was affirmed in Smith v. Murray, ___ U.S. ___, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). There, the Court went further than Carrier in delineating what constitutes cause for a procedural default. This case will be discussed more fully in a later section of this opinion dealing with whether Irving can show cause here for his failure to assert certain claims on appeal. Suffice it to say at this point that procedural bars have been recognized by the United States Supreme Court as valid tools for focusing the attention of state appellate courts on all relevant issues that the defendant may raise at the time of his direct appeal.
The Court of Appeals for the Fifth Circuit, however, has recently reversed a death penalty case on grounds that the invocation of procedural bars by this Court has not been evenhanded or regular. Wheat v. Thigpen, 793 F.2d 621 (5th Cir.1986). The Court made the following finding:
In the years immediately preceding Wheat's appeal the Mississippi Supreme Court routinely reviewed claims made for the first time on writ of error coram nobis. The first case where the court expressly declares that it will not consider claims raised for the first time on writ of error coram nobis is the case involving Wheat's petition. Wheat v. Thigpen, 431 So.2d 486 (Miss. 1983). In a series of cases following Wheat the court repeatedly held that it would not consider claims raised for the first time on writ of error coram nobis. [cites omitted] Yet, on at least one occasion following the court's announcement that it would not consider claims not raised on the direct appeal, the court has addressed the merits of a claim raised for the first time after the direct appeal. Caldwell v. State, 481 So.2d 850 (Miss. 1985)... . We are therefore persuaded that the Mississippi Supreme Court had not clearly announced or strictly or regularly followed the procedural bar at the time of Wheat's direct appeal. Thus, no independent and adequate state grounds exist to prevent federal review of Wheat's claim concerning the prosecutor's closing argument.
793 F.2d at 625-27.
Miss. Code Ann. § 99-39-21 (Supp. 1985) allows this Court to consider matters normally procedurally barred "upon a showing of cause and actual prejudice... ." In light of the discretion granted to this Court by statute, and practiced by the United States Supreme Court pursuant to its decisions, and in view of the likelihood that these issues will be reached by the Federal courts, this opinion will, where possible, give alternate grounds for resolution of the issues presented, other than procedural bar.
As to Irving's claim that the Act cannot be applied retroactively to him, this Court has, under some circumstances refused to apply the Post-Conviction Relief Act retroactively. However, the cases in which this occurred involved strictly procedural questions. Perkins v. State, 487 So.2d 791 (Miss. 1986); Odom v. State, 483 So.2d 343 (Miss. 1986). The State argues here that Irving's claim is grounded on a substantive portion of the Act, under which his rights have not really changed. We adopt the State's argument, that the issue of whether the Act may be applied here retroactively may be answered affirmatively.

II. PROSECUTORIAL MISCONDUCT
None of the allegations of prosecutorial misconduct were raised on direct appeal. *310 However, in light of the preceding discussion, the allegations will be briefly summarized:
1) The reference in closing argument to Marion Albert Pruett and Irving's cousin, Givhan, as people who might get out on (or did get out on) parole, though serving life sentences;
2) The prosecutor's questioning of Irving at the 1981 hearing about his failure to testify at the 1976 trial;
3) The prosecutor's reference in closing argument to a prior burglary conviction and consumption of drugs and alcohol as aggravating circumstances;
4) The implication from the argument in 1) that Irving was a future danger to society;
5) The prosecutor's opinion that the defendant's story was "preposterous;" and
6) The cumulative effect on these instances of alleged misconduct.
It is true that this Court has reversed death penalty sentences where the cumulative effect of prosecutorial misconduct has denied the appellant a fair and impartial trial. Stringer v. State, 500 So.2d 928 (1986). However, the allegations of this petition come nowhere close to the misconduct in Stringer, and, in our opinion do not mandate review under § 99-39-21.

III. EXCLUSION OF JUROR WITH SCRUPLES ABOUT DEATH PENALTY
Irving raises two possible errors under this heading: first, that the trial court improperly prevented defense counsel from questioning prospective jurors as to whether they would automatically vote for the death penalty  the reverse  Witherspoon question; and second, that the questioning of the jurors who were excused for scruples against the death penalty did not sufficiently establish their inability to follow the law.
The State argues that these claims are procedurally barred by Irving's failure to raise them on direct appeal. However, as stated earlier, this may not absolutely preclude consideration of any issues.
Irving cites several cases in support of his reverse-Witherspoon argument  none of which are binding on this Court. Crawford v. Bounds, 395 F.2d 297 (4th Cir.1968); Thomas v. State, 403 So.2d 371 (Fla. 1981); Poole v. State, 194 So.2d 903 (Fla. 1967); State v. Henry, 198 So. 910 (La. 1940); Patterson v. Commonwealth, 283 S.E.2d 212 (Va. 1981).
While this issue may have arisen in this Court in briefs, there is no case in which it has appeared in the opinion. In Sims v. United States, 405 F.2d 1381 (D.C. Cir.1968), the Court held that the defendant's right to so question jurors existed, stating:
[I]f the Government is allowed to ask the question permitted in Witherspoon  whether a juror under no circumstances would consider bringing in a death penalty verdict  then the defendant should be allowed to ask the reverse question  whether under all circumstances a juror feels compelled to return a death penalty verdict when he finds a defendant guilty of first degree murder.
405 F.2d at 1384, n. 5. A different result was reached in King v. Strickland, 714 F.2d 1481 (11th Cir.1983), where the defendant attempted "to ask prospective jurors whether they favored a mandatory death penalty for certain crimes." Id. at 1495. The court of appeals upheld the Florida Supreme Court's decision that the refusal to permit such questioning was not error. "The subject question, however, did not address the juror[s]'s impartial application of existing law, but rather it concerned [their] conception of what laws should exist." Id. (quoting King v. State, 390 So.2d 315, 319 (Fla. 1980), cert. denied 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825).
The specific question objected to in King was "Would anybody here be in favor of having a mandatory death penalty " [for certain crimes] King, 390 So.2d at 319. Thus, it was not a question addressed to the jury's exercise of discretion in administering the death penalty, but to their agreement *311 with legislatively enacted punishment. The question complained of here was, "How many of you agree that for every murder committed that the State ought to kill the person that committed it?" And, later, defense counsel asked, "How many of you feel that a life sentence is a severe punishment?" It appears that the questions come closer to that allowed in Sims than to that prohibited by King, and that the trial court may have allowed the questioning.
However, to reverse on this issue would risk running afoul of the Fifth Circuit's holding in Wheat that this Court will circumvent procedural bars arbitrarily. Thus, we find that the issue was procedurally barred; but that there existed cause for the failure to raise the issue earlier. In Smith v. Murray, the United States Supreme Court reviewed its criteria for finding cause, which may be summarized as follows:
[A] deliberate, tactical decision not to pursue a particular claim is the very antithesis of the kind of circumstance that would warrant excusing a defendant's failure to adhere to state's legitimate rules for the fair and orderly disposition of its criminal cases.
... .
[A] state's subsequent acceptance of an argument deliberatly abandoned on direct appeal is irrelevant to the question whether the default should be excused on federal habeas.
... .
[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. `quoting Carrier.

... .
It will often be the case that even the most informed counsel will fail to anticipate a state appellate court's willingness to reconsider a prior holding or will underestimate the likelihood that a federal habeas court will repudiate an established state rule.
... .
[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures. `quoting Reed v. Ross [468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1]... . But ... the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was `available' at all.
... .
[However] `where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default. `quoting Carrier.

___ U.S. at ___-___, 106 S.Ct. at 2666-68, 91 L.Ed.2d at 444-46.
This language suggests that an alleged error should be reviewed, in spite of any procedural bar, only where the claim is so novel that it has not previously been litigated, or, perhaps, where an appellate court has suddenly reversed itself on an issue previously thought settled. Of course, Smith also recognized the claim of ineffective assistance of counsel as cause for procedural default.
The question here, then is whether the reverse Witherspoon issue is so novel that recent developments have provided a right that was heretofore unavailable. We think not, and hold that he is procedurally barred.
As to the second part of the argument under this heading, Irving asserts that questioning of the jurors did not go far enough to establish that they could, under no circumstances, vote for the death penalty. As the United States Supreme Court has recently held, "[D]eterminations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism." Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 852, 83 *312 L.Ed.2d 841, 852 (1985). Because of the inherent difficulty in formulating an exact set of questions and answers that would disqualify a juror, the Court also held that "deference must be paid to the trial judge who sees and hears the juror." 469 U.S. at 426, 105 S.Ct. at 853, 83 L.Ed.2d at 853. This holding has been reaffirmed in Darden v. Wainwright, ___ U.S. ___, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), and adopted by this Court in Fuselier v. State, 468 So.2d 45 (Miss. 1985) and Stringer v. State, ___ So.2d ___ No. 55,607, decided September 3, 1986 (not yet reported).

IV. FAILURE TO MAKE ENMUND FINDINGS
This issue was raised on the direct appeal of Irving's second sentencing trial. This Court found no error, holding "this argument is predicated on the erroneous assumption that the jury was bound to accept the impeached and contradicted testimony of appellant's cousin, Keith Givhan, that it was Givhan and not Irving who shot Gambrell Ray." Irving v. State, 441 So.2d 846, 852 (Miss. 1983). The State asserts that the issue is, thus, res judicata, particularly since Irving was indicted for and found guilty of the actual killing, with malice aforethought.
In Cabana v. Bullock, ___ U.S. ___, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), the United States Supreme Court held that the Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 findings are not coexistent with the findings that the defendant is guilty of murder as it is defined by the substantive law:

Enmund holds only that the principles of proportionality embodied in the Eighth Amendment bar imposition of the death penalty upon a class of persons who may nonetheless be guilty of the crime of capital murder as defined by state law: that is, the class of murderers who did not themselves kill, attempt to kill, or intend to kill.
___ U.S. at ___, 106 S.Ct. at 696, 88 L.Ed.2d at 716.
The Court went on to hold that the instructions to the jury are not necessarily determinative of whether the Enmund findings were made, but "Rather, the court must examine the entire course of the state-court proceedings against the defendant in order to determine whether, at some point in the process, the requisite factual finding as to the defendant's culpability has been made." ___ U.S. at ___, 106 S.Ct. at 697, 88 L.Ed.2d at 717. This holding allows for the required findings to be made at the trial court or appellate court level. Furthermore, in some cases, the Enmund criteria may be so apparent that a separate finding may not be necessary:
There may be some cases in which the jury instructions would theoretically have permitted the jury to find the defendant guilty of a capital offense and sentence him to death without finding the Enmund factors, but in which the theory on which the case was tried and the evidence received leave no doubt that the jury's verdict rested on a finding that the defendant killed or intended to kill. For example, where a defendant conceded that he committed the killing and defended against the charge of murder only by claiming self-defense, a jury verdict of guilty would necessarily satisfy Enmund even if, for some reason, the trial court's instructions did not explicitly require a finding that the defendant killed, attempted to kill, or intended to kill. In such a case, a federal habeas court would be justified in treating the state courts' failure to make explicit Enmund findings as harmless beyond a reasonable doubt ...
___ U.S. at ___, n. 6, 106 S.Ct. at 700, n. 6, 88 L.Ed.2d at 720, n. 6.
Thus, if this Court were dealing only with the 1976 proceedings, where Irving's statement indicated that he shot Ray in self-defense, separate Enmund findings might not be necessary. However, at the second sentencing hearing, evidence was introduced that it was Givhan, not Irving who actually shot Ray. It appears, however, that the second jury was bound by the factual determinations of the first, as to whether Irving shot Ray. The Cabana *313 Court held: "At what precise point in its criminal process a State chooses to make the Enmund determination is of little concern from the standpoint of the Constitution." ___ U.S. at ___, 106 S.Ct. at 697, 88 L.Ed.2d at 717. We hold that the requisite Enmund type findings were made during the 1976 trial.
However, the Enmund argument is of little consequence in this case, inasmuch as a clear jury issue was presented as to whether or not the defendant killed, attempted to kill, or intended to kill. The court's instruction required the jury to find that the defendant killed the deceased while in the act of robbing him. There was ample evidence to support the jury's finding that the defendant armed himself for the purpose of robbing the deceased, and that the murder was a necessary consequence thereof. This case is not factually related to Enmund.
Therefore, the issue is resolved here in favor of the State.

V. USE OF ROBBERY AS UNDERLYING OFFENSE AND AGGRAVATING FACTOR
This issue was raised unsuccessfully on the direct appeal of Irving's second sentencing trial. 441 So.2d 846. Furthermore, it has been litigated adversely to Irving's position in this Court previously. Billiot v. State, 478 So.2d 1043 (Miss. 1985); Gray v. State, 472 So.2d 409 (Miss. 1985).

VI. USE, IN AN INSTRUCTION, OF THE PRESENCE OF PRIOR CRIMINAL ACTIVITY AS A FACTOR PRECLUDING MITIGATION
Irving argues here that the wording of Instruction S-1 worked against him. The specific language complained of stated, "Consider the following elements of mitigation in determining whether the death penalty should not be imposed: (1) Whether the defendant has a significant history of prior criminal activity." Since Irving did have a prior conviction, he alleges that its presence worked against him, by virtue of the instruction, whereas the instruction is intended to focus the absence of any prior criminal activity as a factor working for the defendant. This error, he asserts, was further compounded by the language used by the prosecutor in his closing argument, where he said, "Aggravating circumstances, I would say being that he had a criminal record, burglary conviction, didn't learn anything by it, continued his wayward ways even adding to it drugs, drinking and whatever and murder." This argument was raised on direct appeal. There, this Court noted that Instruction S-1 tracked the language of § 99-19-101 in listing the mitigating factors which could be considered. 441 So.2d at 851. This Court also noted that the defendant had requested an instruction (D-4) on mitigating circumstances that was refused by the trial court. Instruction D-4 listed as a mitigating circumstance: "(a) The defendant has no record of criminal convictions for crimes involving force or violence to persons." The corresponding language of S-1 was: [(1) Whether the defendant has a significant history of prior criminal activity." Thus, the prior offense of burglary would not have been considered in an unfavorable light by the first instruction, but it would by the second. However, as this Court noted in Irving, Instruction S-1 also contained the following guide to the jury on mitigating factors: "(4) Any other matter, any other aspect of the defendant's character or record, and any other circumstances of the offense brought before you during the trial of this cause which you, the Jury, deem to be mitigating on behalf of the defendant." Thus, the instruction, while it may have impliedly allowed the jury to consider Irving's prior record, also allowed the jurors to consider the fact that his prior record was non-violent as a mitigating factor.

VII. THE FAILURE TO INSTRUCT THE JURY OF ITS DISCRETIONARY POWER TO RETURN A LIFE SENTENCE REGARDLESS OF ITS FINDINGS ON AGGRAVATING AND MITIGATING CIRCUMSTANCES
The position of this Court on this issue was stated thusly in Irving's appeal of his *314 sentencing trial: "It therefore appears that the `mercy instruction' is not mandated, but will be approved if granted by the trial court largely because it is not prejudicial to a defendant." 441 So.2d at 851. See also Johnson v. State, 477 So.2d 196 (Miss. 1985); Cabello v. State, 471 So.2d 332 (Miss. 1985); Billiot v. State, 454 So.2d 445 (Miss. 1984).

VIII. THE BURDEN OF PROOF ON WHETHER THE AGGRAVATING CIRCUMSTANCES OUT-WEIGHED THE MITIGATING CIRCUMSTANCES
This issue was determined on basically the same language in Stringer v. State, 500 So.2d 928 (1986) and Jordan v. State, 464 So.2d 475 (Miss. 1985). Those cases relied on Gray v. Lucas, 677 F.2d 1086 (5th Cir.1982), which held that "such an instruction still places the burden of proof on the prosecution to prove aggravating circumstances. The Mississippi Supreme Court has construed its capital punishment statute to place the burden of proving any aggravating circumstances on the prosecution. See Gray v. State, 351 So.2d 1342, 1345, supra. This is the critical burden since the jury's failure to find an aggravating circumstance precludes it from imposing the death penalty." Id. at 1107.

IX. FAILURE TO INSTRUCT THAT THE PROSECUTION MUST PROVE THAT THE AGGRAVATING CIRCUMSTANCES EXIST AND THAT THEY ARE SUFFICIENT TO IMPOSE THE DEATH PENALTY.
Same as above.

X. THE "ESPECIALLY HEINOUS, ATROCIOUS, OR CRUEL" AGGRAVATING CIRCUMSTANCE WAS VAGUE, OVERBROAD, AND INAPPLICABLE TO THIS CASE
In the direct appeal on the second sentencing hearing, this Court dealt with the issue of whether this murder was "conscienceless or pitiless" or "unnecessarily torturous to the victim." In finding in the affirmative, this Court noted that "Doubtless Ray was in fear of his life from the time he saw the gun pointed at him until he was shot a few seconds later... . The record shows Irving had known Ray for many years, that Irving used his familiarity to gain admittance into the store after hours and then shot Ray for a small amount of money. Because of these facts and considering that the present case depicts a killing no less heinous than those in Edwards [v. State, 413 So.2d 1007 (Miss. 1982)] and Gilliard [v. State, 428 So.2d 576 (Miss. 1983)] [the murder was especially heinous and cruel]." 441 So.2d at 850.
The same argument was also made in Stringer v. State, which involved another killing committed in the course of a robbery. This Court held that the murder could be considered especially heinous and cruel, in light of the fact that Ray McWilliams, the victim, was forced to fight for his life and the life of his wife. Furthermore, this Court held that, where the death penalty is based on more than one aggravating circumstance, invalidation of one may not invalidate the entire sentence. See also Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). In this case, the jury found that the murder was especially heinous and cruel, and that it was committed for pecuniary gain.

XI. INSTRUCTIONS ON MITIGATING CIRCUMSTANCES
Three alleged errors are asserted by Irving which will be grouped together in this heading: the court's refusal to give the requested instruction delineating mitigating circumstances, which, according to Irving, had the effect of lumping all of them together as a single factor; the failure of the trial court to require the jury to make specific, written findings on mitigating circumstances; and the failure of the trial court to give an instruction on diminished capacity.
*315 As to the first contention, the opinion of this Court on direct appeal considered at length the trial court's failure to grant Instruction D-4, and concluded that there was no error therein. As to the other two contentions, there is no indication that Irving's counsel raised these issues at trial, where they could have been corrected. He defends this failure in his brief with the statement that "Defense counsel's direct appeal of Instruction S-1 necessarily included all vital elements left out of that instruction. (Application, p. 35). In Stringer v. State, 500 So.2d 928 (1986), this Court held that the contemporaneous objection rule applies even in death penalty cases. See also Gray v. State, 472 So.2d 409 (Miss. 1985). In Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the United States Supreme Court also held that the failure to make a contemporaneous objection at trial constitutes a waiver of any error subsequently asserted. Consider also the following language from the United States Supreme Court regarding procedural default: "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default... . . when a trial default occurs: the default deprives the trial court of an opportunity to correct any error without re-trial, detracts from the importance of the trial itself, gives state appellate courts no chance to review trial errors, and `exacts an extra charge by undercutting the State's ability to enforce its procedural rules.'" Murray v. Carrier, 477 U.S. at ___, 106 S.Ct. at 2645, 91 L.Ed.2d at 407-08 quoting Engle v. Isaac, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982).

XII. FAILURE TO VOIR DIRE THE JURY ABOUT PRE-TRIAL PUBLICITY
Irving asserts here that the trial judge only conducted "brief questioning of the entire group of jurors, with only individual questioning of those who responded to his request that those stand who already had their mind [sic] made up about the case." He does not contend that he requested additional questioning, nor does he indicate precisely how he was prejudiced by the lack of further questioning. For the reasons enumerated above, he is precluded from raising this issue now.

XIII. PREVENTION OF VOIR DIRE ABOUT FEELINGS ABOUT THE SEVERITY OF LIFE IMPRISONMENT
This issue has been discussed in part III of this opinion with respect to the reverse-Witherspoon issue.

XIV. EXCLUSION OF TESTIMONY REGARDING MITIGATING FACTORS
Irving asserts two errors here: the limitation of testimony allowed from a teenager and a Parchman chaplain regarding Irving's change in character since he had been imprisoned; and the refusal of the trial court to allow into evidence an affidavit of Keith Givhan, offered to refute the charge of recent fabrication of his confession that he actually shot Ray.
As the State points out, these issues were not raised on direct appeal. However, based on the rationale of Carrier and Smith, the refusal to allow the testimony regarding Irving's prison activities will be discussed here in light of the recent United States Supreme Court decision of Skipper v. South Carolina, ___ U.S. ___, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986).
The specific testimony offered was as follows: a teenager who had received advice from Irving attempted to testify that she had received a letter of encouragement from him. When describing the contents of the letter, a hearsay objection was made. The trial judge ruled that "I think the objection is well taken for the same reasons previously mentioned." Prior to this testimony, an objection had been interposed to the previous witness's testimony on the basis of relevance. Thus, it is somewhat *316 unclear as to whether the objection was sustained on the grounds of hearsay or relevance. Later, the same teenager witness was asked whether she thought Irving should live. An objection was sustained on the basis of that being for the jury to decide. A Parchman chaplain also testified in mitigation. When he attempted to testify about the contents of a letter he received from Irving, a hearsay objection was sustained. Irving now argues that: 1) rules of evidence are relaxed to permit introduction of mitigating evidence; 2) the contents of the letters were not offered for the truth of the matter asserted, but to demonstrate his sincerity in helping others; and 3) the ultimate question objection is inappropriate in the context of mitigating evidence.
The defendant in Skipper was sentenced to death for the crime of rape. The prosecution was allowed to argue that, if merely incarcerated, the defendant would pose a rape threat to other inmates. However, when the defendant sought to introduce opinion evidence from two jailers and a "regular visitor" to the jail that he had made a good adjustment to prison life, the trial judge ruled the evidence irrelevant. The Supreme Court reversed, Justice White writing for the majority that "[A] defendant's disposition to make a well-behaved and peaceful adjustment to life in prison is itself an aspect of his character that is by its nature relevant to the sentencing determination." ___ U.S. at ___, 106 S.Ct. at 1672, 90 L.Ed.2d at 8. The prosecutor's arguments made this factor particularly relevant:
The relevance of evidence of probable future conduct in prison as a factor in aggravation or mitigation of an offense is underscored in this particular case by the prosecutor's closing argument, which urged the jury to return a sentence of death in part because the petitioner could not be trusted to behave if he were simply returned to prison. Where the prosecution specifically relies on a prediction of future dangerousness in asking for the death penalty, it is not only the rule of Lockett [v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973] and Eddings [v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1] that requires that the defendant be afforded an opportunity to introduce evidence on this point; it is also the elemental due process requirement that a defendant not be sentenced to death "on the basis of information which he had no opportunity to deny or explain." Gardner v. Florida, 430 U.S. 349, 362 [97 S.Ct. 1197, 1207, 51 L.Ed.2d 393] (1977).
___ U.S. ___, n. 1, 106 S.Ct. at 1671, n. 1, 90 L.Ed.2d at 7, n. 1.
The first hurdle to leap in applying Skipper to this case is the factual difference: the objection here was apparently sustained on hearsay, not relevance. That point was discussed, however, in this Court's opinion in Jordan v. State, 464 So.2d 475 (Miss. 1985), where the majority opinion held that evidence of an invention of Jordan's while in jail "would have been hearsay and inadmissible." Id. at 485.
The second issue here is whether the prosecutor's argument in this case rose to the level of that noted in Skipper. Here, the prosecutor referred to Marion Albert Pruett as an example of what can happen to a person serving a life sentence. He also referred to the defendant's prior lifestyle as an aggravating circumstance. These arguments do not appear as prejudicial as those in Skipper.
The third issue here is that Irving, unlike the defendant in Skipper, was not completely precluded from submitting mitigating evidence about his character in prison. The record reflects that several witnesses were allowed to testify for Irving, including friends, acquaintances, family members, and prison officials. Therefore, no particular type of evidence was excluded, as in Skipper  the exclusion was more that of degree. All of these factors severely weaken any argument Irving can make under the Skipper rationale.
As to the exclusion of Givhan's statement, in Stampley v. State, 284 So.2d 305 (Miss. 1973), this Court held that "prior consistent statements of a witness are admissible *317 when his credibility has been attacked by proof of prior inconsistent statements for the purpose of rebuttal [cites omitted] provided the witness denies having made the alleged inconsistent statement, or admits them, but explains them." Id. at 307. See also Smith v. State, 457 So.2d 327 (Miss. 1984). Irving's attorney attempted to have Givhan's statement admitted during his direct examination. Irving cites to Rule 801(d)(1)(B) of the Mississippi Rules of Evidence, which excludes from hearsay prior statements of a witness when it is "consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive." Since Givhan had not yet been cross-examined at the time the affidavit was offered, his credibility had not been attacked within the meaning of Stampley, nor had he been charged with recent fabrication.

XV. PROPORTIONALITY OF SENTENCE
The next two alleged errors deal with the proportionality of Irving's sentence: the first, because only two aggravating circumstances were found; the second, because the proportionality review by this Court was insufficient.
The first assignment of error here has been dealt with under the heading of whether the crime was "especially heinous and cruel." The second assignment was decided adversely to Irving in his direct appeal. "We have reviewed the record and conclude that Irving received a fair trial. We also conclude the death penalty for John Buford Irving, III, is not disproportionate, wanton or freakish when compared with our other decisions... ." 441 So.2d at 853.

XVI. RETROACTIVE APPLICATION OF SECTION 99-19-101
Irving argues here that § 99-19-101 did not become effective until after the date of Ray's murder, and, thus, could not properly be used to sentence him. This contention was raised on direct appeal and decided adversely to Irving. See also part I of this opinion.

XVII. INEFFECTIVE ASSISTANCE OF COUNSEL
Irving's basic argument here is that the failure of counsel to raise the several errors asserted above amounts to ineffective assistance of counsel. Irving also asserts that his attorney professionally distanced himself from Irving, allowed the second jury to discover that Irving had previously received the death penalty, and invited prosecutorial misconduct.
On direct appeal, this Court found Irving's counsel competent despite six specific alleged errors:
1. Failure to poll the jury;
2. Failure to insure a complete record;
3. Failure to have Irving present at "critical" stages of trial;
4. Failure to object to improper questions;
5. Ineffective cross-examination; and
6. Failure to raise issues in the motion for a new trial and on appeal.
In discussing point 6, however, the opinion admitted that "there are points which may have been raised on appeal but were not and are now procedurally barred." Under the two-prong standard announced in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Irving must show that the failure to assert the errors earlier, as well as the other professional errors complained of, meets both the performance and prejudice tests. Since the errors which Irving complains that his counsel did not raise earlier have been discussed in this opinion unfavorably to him, he cannot meet the prejudice test. As to the other "lapses"; the alleged distancing, allowing the jury to find out about the previous sentence, and the "invitation" of prosecutorial misconduct, they seem to be more in the nature of trial strategy. There is no merit to this contention.

XVIII. THE USE OF PEREMPTORY CHALLENGES TO EXCLUDE BLACK JURORS
In Batson v. Kentucky, ___ U.S. ___, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the *318 Supreme Court reversed a case based on the discriminatory use of peremptory challenges. However, there is a basic distinction between Irving's case and Batson. There, the defendant objected at trial to the composition of the jury, and his objection was specifically based on the removal of black jurors. The Supreme Court held "In this case, petitioner made a timely objection to the prosecutor's removal of all black persons on the venire. Because the trial court flatly rejected the objection without requiring the prosecutor to give an explanation for his action, we remand this case for further proceedings." ___ U.S. ___, 106 S.Ct. at 1725, 90 L.Ed.2d at 90.
The failure of Irving's counsel to object to the racial makeup of the jury at trial goes beyond a mere procedural default. The rationale of Batson is entirely premised on the idea that the trial court will hear the challenge to the jury and decide whether the prosecutor has used his peremptory challenges in a discriminatory fashion. The general procedure envisioned by the Court may be summarized thusly:
[T]he defendant first must show that he is a member of a cognizable racial group [cite omitted], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits `those to discriminate who are of a mind to discriminate.' [cite omitted] Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.
... .
In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances... . We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.
Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors.... The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination.
... .
In those states applying a version of the evidentiary standard we recognize today, courts have not experienced serious administrative burdens, and the peremptory challenge system has survived. We decline, however, to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges. [emphasis added]
___ U.S. ___-___, 106 S.Ct. 1723-24, 90 L.Ed.2d at 87-90.
Irving's failure to timely object to the racial composition of his jury defeats the substance of the Court's holding in Batson that the trial judge must determine the validity of peremptory challenges. Furthermore, he cannot show the establishment of a new right as cause for his failure to raise the claim earlier, for, as the Supreme Court noted of the claim advanced in Smith v. Murray, "various forms of the claim he now advances [had] been percolating in the lower courts for years at the time of his original appeal." ___ U.S. at ___, 106 S.Ct. at 2667, 91 L.Ed.2d at 446. See Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Accordingly, this claim is denied.

XIX. THE DEATH PENALTY IS BEING APPLIED IN A MANNER WHICH DISCRIMINATES ON THE BASIS OF RACE, SEX AND POVERTY
The death penalty in this case was reviewed on direct appeal and found to be not *319 "disproportionate, wanton or freakish... ." 441 So.2d at 853.

XX. THE UNCONSTITUTIONAL EXCLUSION OF JURORS UNDER THE AGE OF TWENTY ONE
This claim has not previously been raised. In any event, this Court has previously held that Miss. Code Ann. § 13-5-1 (1972) does not unconstitutionally prevent those between the ages of eighteen and twenty-one from serving on juries. Fermo v. State, 370 So.2d 930 (1979); Joyce v. State, 327 So.2d 255 (Miss. 1976); Johnson v. State, 260 So.2d 436 (Miss. 1972).

XXI. USE OF A STATE WITNESS AS A COURT BAILIFF
This claim has not previously been raised, nor does it appear to rise to the magnitude of constitutional claims that may defeat a procedural bar. Furthermore, the State points to the evidence in the record showing that such an incident did occur, and the record shows that the event transpired outside the presence of the jury. There is no merit to this claim.

XXII. INCOMPLETENESS OF THE RECORD
Irving asserts as error the absence in the record of his motion for a continuance and the hearing on his motion for a change of venue. He has not previously raised these issues. Furthermore, he has not specified how the absence of these documents prejudiced him in any way. The issue of the denial of change of venue was decided adversely to Irving in the direct appeal of his 1976 trial. 361 So.2d at 1369. We do not find merit in this contention.

XXIII. USE OF IRVING'S CONFESSION AT THE SECOND SENTENCING HEARING
In the opinion written relative to Irving's first appeal, this Court held that "The legal determination made by the trial court that appellant's confession was freely and voluntarily given is supported by the weight of credible evidence." 361 So.2d at 1370.

XXIV. FAILURE OF 1976 TRIAL COURT TO GIVE INSTRUCTION DEFINING CRIME OF ROBBERY AND GIVING LESSOR INCLUDED OFFENSE OF MURDER
It is not clear that Irving ever requested an instruction defining robbery; thus, his failure to do so precludes him from raising that issue later. Gray v. State, 472 So.2d 409 (1985). The question of the lesser included offense was raised on direct appeal, where this Court held that it was properly refused. The guilt phase of that trial was subsequently left intact by the District Court.

XXV. THE EXCUSAL OF JURORS WITH QUALMS ABOUT THE DEATH PENALTY CREATED A PROSECUTION PRONE JURY AT THE 1976 TRIAL
This issue has been decided against Irving by the United States Supreme Court in Lockhart v. McCree, ___ U.S. ___, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986) "[W]e deal not with capital sentencing (in this case) but with the jury's more traditional role of finding the facts and determining the guilt or innocence of a criminal defendant, where jury discretion is more channeled. We reject (the appellant's) suggestion that Witherspoon and Adams have broad applicability outside the special context of capital sentencing... ."

XXVI. CONFLICT OF INTEREST IN REPRESENTATION AT THE 1976 TRIAL
This issue has been specifically decided adversely to Irving with regard to the guilt phase of his trial by this Court and the District Court.

*320 XXVII. THE SUBSEQUENT CONFESSION OF GIVHAN MANDATES A NEW TRIAL
This does not constitute new evidence, in light of the fact that evidence was given to the previous jury that both Givhan and Irving were present at Ray's grocery. Furthermore, the second sentencing jury apparently rejected this confession when it sentenced Irving to death.

XXVIII. THE PROSECUTION EXERCISED ITS PEREMPTORY CHALLENGES TO STRIKE BLACK JURORS AT THE 1976 TRIAL
This does not constitute new evidence, in light of the fact that evidence was given to the previous jury that both Givhan and Irving were present at Ray's grocery. Furthermore, the second sentencing jury apparently rejected this confession when it sentenced Irving to death.

XXIX. IRVING'S CONFESSION WAS INADMISSIBLE
As stated earlier, this contention was decided in direct appeal, and not disturbed by the District Court.

XXX. A JUROR'S DECLARATION THAT SHE WAS RAY'S SISTER SHOULD HAVE MANDATED A MISTRIAL
This contention was addressed on direct appeal and not disturbed by the District Court.

XXXI. JURORS UNDER THE AGE OF TWENTY-ONE WERE EXCLUDED
See previous discussion.

XXXII. THE RECORD ON DIRECT APPEAL DID NOT INCLUDE THE HEARING ON THE MOTION FOR CHANGE OF VENUE AND THE TRIAL JUDGE DID NOT PROPERLY VOIR DIRE THE JURY
Irving does not specifically state how the incompleteness of the record prejudiced him. Even in light of the relaxing of change of venue requirements announced in Fisher v. State, 481 So.2d 203 (Miss. 1985) and Johnson v. State, 476 So.2d 1195 (Miss. 1985), the defendant is required to make some showing by testimony of local citizens that he cannot receive a fair trial in the community. See also White v. State, 495 So.2d 1346 (1986).
Having carefully considered each contention of the appellant and painstakingly reviewed the record in this case, we conclude that the petition for rehearing should be denied.
Finally, while this petition is not frivolous, litigation must come to an end at some time. This case has been tried, reviewed, and combed over by two trial juries, at least four times by this Court, many times by the U.S. Supreme Court and the U.S. District Court over a period of time exceeding ten years. By the Grace of God, when will this litigation be concluded? The judicial branch of this government, although not perfect, is the best in the world but it must be allowed to carry out its function in this free society, otherwise, it too will be under attack and fail due to the horrendous delay and inconsistency between the various courts.
PETITION FOR REHEARING DENIED AND WEDNESDAY, THE 10TH DAY OF DECEMBER, 1986 IS SET FOR THE DAY OF EXECUTION.
WALKER, C.J., ROY NOBLE LEE, P.J., and PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
HAWKINS, P.J., and ROBERTSON, J., not participating.