517 So.2d 1360 (1987)
Bobby CALDWELL
v.
STATE of Mississippi.
No. DP-30. (Formerly No. 54285).
Supreme Court of Mississippi.
September 30, 1987.
Kenneth J. Rose, Jackson, Robert B. McDuff, Washington, D.C., for appellant.
Edwin Lloyd Pittman, Atty. Gen., by Marvin L. White, Jr., Asst. Atty. Gen., Jackson, for appellee.
DAN M. LEE, Justice, for the Court:
Bobby Caldwell was convicted of capital murder and sentenced to death in the Circuit Court of DeSoto County. On direct appeal, this Court affirmed both findings in Caldwell v. State, 443 So.2d 806 (Miss. 1983); however, the United States Supreme Court vacated this sentence in Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). Following the remand from the United States Supreme Court, Caldwell sought post-conviction review of the guilt verdict in the state courts, alleging for the first time that "the prosecution's use of peremptory challenges to strike all blacks and several women from the group of potential jurors violated federal and state constitional law." Caldwell v. State, 481 So.2d 850-51 (Miss. 1985). This Court reviewed this claim, but found that there was "not shown a continuous and systematic exclusion of blacks or women from jury service in DeSoto County." Id. That holding was based upon the authority of Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Contemporaneously with his seeking post-conviction relief, Caldwell was retried on the sentence issue and was ultimately, in the summer of 1986, sentenced to life imprisonment by a Panola County jury. At present, he is not under a death sentence.
After this Court refused to grant post-conviction relief, Caldwell petitioned the United States Supreme Court for certiorari. Caldwell v. Mississippi, ___ U.S. ___, 107 S.Ct. 1269, 94 L.Ed.2d 130 (1987). While his petition was pending, the Court decided Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which overturned Swain to the extent that Swain required the proof of repeated striking of black jurors in a number of cases. Thus, Batson changed the showing necessary to *1361 establish an invidious use of peremptory challenges by allowing the defendant to "establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." Batson, 476 U.S. at ___, 106 S.Ct. at 1722-23, 90 L.Ed.2d at 87.
The U.S. Supreme Court delineated the extent to which the Batson rationale applies retroactively in Allen v. Hardy, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) and Griffith v. Kentucky, 479 U.S. ___, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Griffith held that Batson would apply retroactively to "all cases, state or federal, pending on direct review or not yet final... ." 479 U.S. at ___, 107 S.Ct. at 716, 93 L.Ed.2d at 661. In Allen, a federal habeas corpus action, the Court refused to apply Batson "retroactively on collateral review of convictions that became final before our opinion was announced." 477 U.S. at 96, 106 S.Ct. at 2880, 92 L.Ed.2d at 204. The term "final" was defined as "where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in Batson." Id., n. 1.
In light of these recent developments, the United States Supreme Court has remanded Caldwell to this Court, with instructions that it be reconsidered in light of Griffith and Allen. We interpret this action as mandating that this Court review the procedural status of Caldwell as of the time of the Batson decision, in order to determine whether the Batson rationale must be applied retroactively to it.
The decision in Batson was rendered on April 30, 1986. Caldwell filed his petition for certiorari with the United States Supreme Court on March 3, 1986. At that point, he was seeking post-conviction relief under Miss. Code Ann. §§ 99-39-1, et. seq. (Supp. 1986), also known as the "Mississippi Uniform Post-Conviction Collateral Relief Act." A reading of this chapter convinces us that Caldwell's case was not, at the time Batson was decided, on direct appeal, but was on collateral review of a conviction that had achieved finality before Batson was rendered. Thus, applying the rationale of Allen v. Hardy, the challenge to the prosecutor's peremptory challenges need not be reviewed under the more liberal guidelines of Batson. Cf. Williams v. State, 507 So.2d 50 (1987). "(Griffith mandates the availability of Batson rights and procedure to today's appellant, Albert Leroy Williams, whose appeal was perfected some two months prior to Batson and, per force, his conviction had not become final when Batson was decided, nor is it final yet." At p. 53.)
Therefore, having considered this case in light of Griffith v. Kentucky, 479 U.S. ___, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) and Allen v. Hardy, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), as mandated by the United States Supreme Court in its order dated February 23, 1987, and finding that Caldwell's case had achieved finality before Batson was rendered, we reinstate the prior opinion and order of this Court in Caldwell v. State, 481 So.2d 850 (Miss. 1985).
IT IS SO ORDERED.
WALKER, C.J., and ROY NOBLE LEE, P.J., and PRATHER, ANDERSON and GRIFFIN, concur.
ROBERTSON and SULLIVAN, JJ., dissent.
HAWKINS, P.J., not participating.
ROBERTSON, Justice, dissenting:
For reasons set out in my separate opinions in Thomas v. State, 517 So.2d 1285, 1288 (Miss. 1987); and Jones v. State, 517 So.2d 1295, 1304 (Miss. 1987), I am of the view that rights announced in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), are indeed available to Bobby Caldwell, notwithstanding the finality of his conviction. One point not present in Thomas and Jones but present here needs to be addressed. I refer to the fact that Caldwell is before the Court in the status of an applicant for post-conviction relief. The majority holds that this fact *1362 somehow serves to withhold availability of Batson rights to Caldwell.
In Griffith v. Kentucky, 479 U.S. ___, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Supreme Court held that the substantive and procedural rights recognized in Batson were available in all state criminal cases which as of April 30, 1986, were pending on direct review or were not yet final. Nothing, however, in Griffith addresses in any way the question of whether Batson rights are available in state criminal cases which as of April 30, 1986, had become final. For this conclusion, today's majority leaps to Allen v. Hardy, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986). The primary reason Allen is of no moment is that the entire structure of retroactivity analysis employed in Allen was overruled in Griffith. Allen held, as a matter of federal constitutional law, that Batson was not retroactive because it "announc[ed] a new rule" and was "an explicit and substantial break with prior precedent." 478 U.S. at ___, 106 S.Ct. at 2880, 92 L.Ed.2d at 204. Applying the former retroactivity analysis emanating from Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967), the Allen Court held that Batson was not retroactive. But Stovall and progeny were overruled in Griffith. As Allen was based upon Stovall, it is simply not a legitimate post-Griffith citation of authority.
So seen, the majority is stripped of any authority upon which it might hold as a matter of federal constitutional law that Batson may have no retroactive application to cases presenting collateral attacks to final judgments of conviction. Thus freed, I would suggest that there is no rational basis for the sort of distinction the majority would draw between so-called final and so-called non-final convictions. I would offer as persuasive the reasoning advanced by Justice White in another context, in Shea v. Louisiana, 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985).
The claim that the majority's rule serves the interest of fairness is equally hollow. Although the majority finds it intolerable to apply a new rule to one case on direct appeal but not to another, it is perfectly willing to tolerate disparate treatment of defendants seeking direct review of their convictions and prisoners attacking their convictions in collateral proceedings. As I have stated before, see Johnson, supra, at 566-568, 102 S.Ct. at 2596-97 (White, J., dissenting); Williams v. United States 401 U.S. 646, 656-659, 28 L.Ed.2d 388, 91 S.Ct. 1148 [1154-55] (1971) (plurality opinion), it seems to me that the attempt to distinguish between direct and collateral challenges for purposes of retroactivity is misguided. Under the majority's rule, otherwise identically situated defendants may be subject to different constitutional rules, depending on just how long ago now-unconstitutional conduct occurred and how quickly cases proceed through the criminal justice system. The disparity is no different in kind from that which occurs when the benefit of a new constitutional rule is retroactively afforded to the defendant in whose case it is announced but to no others; the Court's new approach equalizes nothing except the numbers of defendants within the disparately treated classes.
The majority recognizes that the distinction between direct review and habeas is problematic, but justifies its differential treatment by appealing to the need to draw "the curtain of finality," ante, at 60 [105 S.Ct. at 1070] 84 L.Ed.2d at 47, on those who were unfortunate enough to have exhausted their last direct appeal at the time Edwards was decided. Yet the majority offers no reasons for its conclusion that finality should be the decisive factor. When a conviction is overturned on direct appeal on the basis of an Edwards violation, the remedy offered the defendant is a new trial at which any inculpatory statements obtained in violation of Edwards will be excluded. It is not clear to me why the majority finds such a burdensome remedy more acceptable when it is imposed on the state on direct review than when it is the result of a collateral attack. The disruption attendant upon the remedy does not vary depending on whether it is imposed on direct review or habeas; accordingly, if *1363 the remedy must be granted to defendants on direct appeal, there is no strong reason to deny it to prisoners attacking their convictions collaterally. Conversely, if it serves no worthwhile purpose to grant the remedy to a defendant whose conviction was final before Edwards, it is hard to see why the remedy should be available on direct review.
470 U.S. at 63-65, 105 S.Ct. at 1072-1073, 84 L.Ed.2d at 49-50.
Justice White offered the above reasoning in dissent regarding the retroactivity vel non of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). He repeated the points in dissent in Griffith, 479 U.S. at ___, 107 S.Ct. at 717-18, 93 L.Ed.2d at 664. That Justice White did not think Batson should be enforced retroactively hardly eviscerates his point of the irrationality of the distinction between final and non-final judgments of conviction. The upset the system in fact experiences from retroactivity differs not one wit because the point arises on collateral attack instead of direct appeal.
The reason, as a matter of federal constitutional law, Batson ought be fully retroactive, in addition to what is said in Griffith, is that it deals with an aspect of the criminal process which may only fairly be regarded as fundamental. Compare Harrell v. State, 386 So.2d 390, 392 (Miss. 1980). Confidence in the integrity of the jury system is no less fundamental than the right to counsel secured in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and enforced retroactively to persons whose convictions had become final long before Gideon. See Kitchens v. Smith, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971); Pickelsimer v. Wainwright, 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41 (1963). We accepted Gideon's retroactive application to final judgments, see Woodruff v. State, 187 So.2d 883, 884 (Miss. 1966), without discernible impairment of the viability of the republic, nor did the sun cease to rise and set.
Beyond these points, there is still the question whether as a matter of the law of this state we should afford Batson rights retroactively to persons mounting collateral attacks upon final judgments of conviction.
The Batson issue is substantially related to the systematic exclusion cases of several decades ago. In the 1960s a number of cases arose wherein black defendants challenged the systematic exclusion of black persons from grand and petit juries in this state, and they did so successfully. On that point the case of Fondren v. State, 199 So.2d 625 (Miss. 1967) is of considerable importance. Fondren had been tried and convicted on a charge of burglary with intent to rape. His conviction was affirmed on direct appeal. See Fondren v. State, 253 Miss. 241, 175 So.2d 628 (1965). There is no indication that the systematic exclusion point was ever mentioned in the original proceedings. This Court's opinion of May 31, 1965, is certainly silent on the subject. Thereafter, Fondren sought a writ of error coram nobis to raise the systematic exclusion point. The Court heard the matter and granted relief. Fondren v. State, 199 So.2d 625 (Miss. 1967). What is important is the fact that the point was not deemed waived at trial or on the original appeal because the defendant "was not advised of his rights by prior counsel." 199 So.2d at 626.
Fondren recognizes the familiar premises that important constitutional rights may not be waived except the waiver be a knowing and intelligent and voluntary one. If the defendant did not know he had the right, how could he voluntarily waive it? (And in a similar sense, because the prosecution did not know what it had to place in the record under Batson, we declined in Williams to invoke a waiver there.) Fondren is particularly important in view of the fact that the systematic exclusion claim in the middle 1960s was not nearly so novel as the Batson claim at the time of the proceedings at issue here. This Court had recognized that systematic and discriminatory exclusion of blacks from jury service was unconstitutional in Farrow v. State, 91 Miss. 509, 45 So. 619 (1907). The Supreme Court of the United States had reminded us of this rule in Patton v. Mississippi, 332 *1364 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947). Defense counsel in Fondren were charged with far greater knowledge of the availability of the rights at issue than can possibly be said to be the case here. The majority neither refutes, overrules nor mentions Fondren, but tiptoes past.
Quite arguably Irving v. State, 498 So.2d 305, 318 (Miss. 1986) is to the contrary. There the Court held that Irving's failure to make a Batson objection resulted in his Batson claim being waived. This was so notwithstanding that Irving's trial and original appeal occurred more than three years before Batson. See Irving v. State, 441 So.2d 846 (Miss. 1983). In one sense, Irving is terribly wrong. It is certainly inconsistent with the approach we took in Fondren. The point should not trouble us in Jones and Thomas, however, because the Irving judgment was final within the meaning and contemplation of Griffith. See Allen v. Hardy, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986). Because Irving was before the Court on post-conviction proceedings and because it was decided prior to Griffith, it forms no precedent for the manner in which we are required to deal with the case we consider today.
For these reasons, coupled with those I have articulated in Thomas and Jones, I respectfully dissent.
SULLIVAN, J., joins this dissent.